# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| v. ) | Case No. 3:18-cr-00168 |
| ) | Judge Aleta A. Trauger |
| GEORGE ANHALT, JR. ) | |
| ) | |

## MEMORANDUM AND ORDER

George Anhalt, Jr. has filed a Motion to Dismiss Count One (Docket No. 141), to which the Government has filed a Response (Docket No. 144), and Anhalt has filed a Reply (Docket No. 154). For the reasons set out herein, that motion will be denied.

Count One of Anhalt's Second Superseding Indictment charges him with the following:

Beginning not later than on or about May 24, 2018, through on or about June 10, 2018, in the Middle District of Tennessee, GEORGE ANHALT, JR., did attempt to kill another person, with intent to prevent the attendance and testimony of the person in an official proceeding, that being Case Number 3:17-cr-00220 in the Middle District of Tennessee, and to prevent the communication by the person to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a Federal offense, that being a conspiracy to distribute and possess with intent to distribute controlled substances.

In violation of Title 18, United States Code, Sections 1512(a)(l)(A) and (C).

(Docket No. 152 at 1.) Specifically, the Government anticipates putting on evidence that Anhalt participated in what appeared, to him, to be a plot to administer a lethal overdose to a witness cooperating in the federal prosecution of one of Anhalt's associates, Darrell Lockridge. But the witness did not exist, Lockridge himself had agreed to cooperate with the Government in obtaining evidence against Anhalt, and the third party serving as a facilitator and intermediary in the supposed killing was actually an undercover federal agent. Anhalt now asks the court to dismiss

Count One on the ground that 18 U.S.C. § 1512(a)(1) does not reach attempts to kill a supposed witness who, unbeknownst to the defendant, is a fictional invention of law enforcement.

Section 1512(a)(1)(A) and (C) make it a crime to

> kill[] or attempt[] to kill another person, with intent to—
>
> > (A) prevent the attendance or testimony of any person in an official proceeding; . . . or
> >
> > (C) prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings . . . .

18 U.S.C. § 14(a)(1). The Supreme Court considered the boundaries of that language in *Fowler v. United States*, 563 U.S. 668, 670 (2011), the case on which Anhalt premises most of his argument. *Fowler* involved a defendant, prosecuted under 18 U.S.C. § 14(a)(1)(C), who "killed a person with an intent to prevent that person from communicating with law enforcement officers in general," but who "did not have federal law enforcement officers (or any specific individuals) particularly in mind." *Id.* at 670. The court held that, "in such circumstances, the Government must show that there was a *reasonable likelihood* that a relevant communication would have been made to a federal officer." *Id.* Anhalt argues that the rule set forth in *Fowler* also precludes a conviction in a case such as his, because a nonexistent witness, by definition, has no reasonable likelihood of saying anything to anyone.

*Fowler* was, in a sense, about the converse of Anhalt's situation. In *Fowler*, the victim was real, but there was an open question with regard to whether the witness tampering that occurred— specifically, the killing of a local police officer who had witnessed the preparations for a planned bank robbery, 563 U.S. at 670—fell within the scope of § 1512(a)(1). Here, the Government cannot produce a flesh-and-blood victim, but there is no question that the witness tampering plot that

2

Anhalt allegedly believed he was joining, if it had been real, would have been the type of plot reached by the statute. In terms of the provisions of § 1512(a)(1) itself, that means that *Fowler* involved the first of the two ways a defendant can satisfy the first element of the offense—a killing—whereas this case involves the second way one can satisfy that element—an attempt to kill. This case is, therefore, facially outside the scope of the holding in *Fowler*. *See Fowler*, 563 U.S. at 677 (explaining that its rule applies "where the defendant *kills a person* with an intent to prevent communication with law enforcement officers generally" (emphasis added)); *see also Stuckey v. United States*, 603 F. App'x 461, 462 (6th Cir. 2015) (stating that the "proper place" for the *Fowler* analysis is in a case where the relationship between the witness tampering and a federal case is "unclear"). The question remains, however, whether some aspect of *Fowler*'s reasoning would necessarily dictate the interpretation of the statute endorsed by Anhalt.

In *Fowler*, the Court acknowledged, first, that, under the express terms of the witness-tampering statute, "no state of mind need be proved with respect to the circumstance . . . that the judge is a judge of the United States or that the law enforcement officer is an officer or employee of the Federal Government . . . ." *Id.* at 671–72 (quoting 18 U.S.C. § 1512(g)(2)). Nevertheless, the Court noted, the statute does require, at least, the "intent to prevent the victim from communicating with (unspecified) law enforcement officers." *Id.* at 674. That requirement led the Court to contemplate what it means to "intend" something that may or may not happen, as with a witness who might or might not speak to federal authorities:

> [O]ne can possess an intent (i.e., one can act in order to bring about a certain state of affairs) even if there is considerable doubt whether the event that the intent contemplates will in fact occur. One can, for example, put up shutters with the intent of protecting the furniture from hurricane damage even if there is considerable doubt that any hurricane will actually occur. One can drive to Fenway Park with the intent of seeing the Red Sox play that afternoon even if a mistake about the date means the stadium is empty. One can blow up a bridge with the intent of stopping an advancing army, even if the army advances regardless, along a different route.

3

> And, similarly, a defendant can kill a victim with an intent to prevent the victim from communicating with federal law enforcement officers even if there is some considerable doubt that any such communication would otherwise have taken place.

*Id.* at 674. Accordingly, the Court held that the Government, in prosecuting a § 1512(a)(1) case, is not required to show, beyond a reasonable doubt, that the victim or intended victim actually would have cooperated with federal authorities. Nevertheless, the Court concluded that § 1512(a)(1) requires the government to "show more than the broad indefinite intent . . . to prevent communications to law enforcement officers in general." *Id.*

The Court provided two reasons for its conclusion. First, the Court observed that construing § 1512(a)(1) broadly "would bring within the scope of this statute many instances of witness tampering in purely state investigations and proceedings, thus extending the scope of this federal statute well beyond the primarily federal area that Congress had in mind." *Id.* at 675. That concern is not present in this case, where an identifiable federal proceeding was implicated. The Supreme Court's other argument, however, focused not on federalism or any prudential concerns, but on the statute's use of the word "prevent":

> [T]he statute speaks of an "intent to *prevent*" something. But (apart from mistakes, as in our Red Sox example) one cannot act with an "intent to prevent" something that could not possibly have taken place regardless. We can speak of a Colorado trout fisherman who tries to prevent his trout stream from being invaded by pike or carp, but in ordinary circumstances we cannot speak about trying to prevent the stream's invasion by whales. Indeed, the dictionary defines "prevent" as "to render (an *intended, possible, or likely* action or event) impractical or impossible by anticipatory action."

*Id.* at 674–75 (quoting OED Online (Mar. 2011) (emphasis added), http://www.oed.com/view/Entry/151073?rskey=QWN6QB&result=2&=false). The Court chose to fashion a standard, based on that dictionary definition, that assumes that an "intent to prevent" a witness's cooperation with federal authorities requires there to have been a "*reasonable likelihood* that, had, e.g., the victim

4

communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer." *Id.* at 677.

The holding of *Fowler* was expressly limited to "a case such as this one." *Id.* Embedded in the Supreme Court's analysis, however, is the very situation the court sees here. The Supreme Court recognized its "Red Sox example"—wherein a person, due to his misunderstanding of a schedule, "intends" to go to a baseball game that does not exist—as an exception to the general rule that one cannot intend to do something impossible. That exception had no bearing on the outcome in *Fowler*, because *Fowler* did not involve an attempt to prevent something that, unbeknownst to the defendant, had no chance of happening. The Supreme Court, however, effectively anticipated that such a situation could arise and pointed out, more than once, that the logic of *Fowler* would not apply. The assumptions underlying *Fowler*, in the words of the Supreme Court, make sense "apart from mistakes." *Id.* at 674. This case, though, *is* about a factual mistake—albeit one into which the defendant was arguably coaxed by law enforcement.

The Government argues that Anhalt's situation should be governed by the general rule that, when a defendant is charged with an inchoate crime such as attempt or conspiracy, "impossibility of completing the crime because the facts were not as the defendant believed is not a defense." *United States v. Williams*, 553 U.S. 285, 300 (2008). Anhalt responds that he has not, as a formal matter, been charged with an "attempt crime" but, rather, with witness tampering, one element of which can be satisfied by an "attempt[] to kill." As far as the court can tell, Anhalt's distinction between an "attempt crime" and a crime with attempt as an element is based entirely on statutory structure, with an "attempt crime" only arising where Congress mentions "attempt" "separate from and after stating the elements" of the offense. (Docket No. 154 at 5.) As an example, he cites 18 U.S.C. §1951(a), which makes it illegal to "obstruct[], delay[], or affect[] commerce or the

5

movement of any article or commodity in commerce, by robbery or extortion *or attempt[] or conspire[] so to do*." 18 U.S.C. §1951(a). In other words, Anhalt's argument hinges on the fact that § 1512(a)(1) says "kills or attempts to kill" instead of just "kills," with "or attempts to do so" later in the sentence. He offers no explanation, however, for why that distinction would have any legal or grammatical significance to the argument that factual impossibility does not negate the described "attempt." The most plausible assumption is that Congress, in choosing to use the word "attempt," intended it to function in the same way as that word functions in other criminal statutes.

The Sixth Circuit has previously held, in cases involving undercover investigations, that law enforcement's use of a fictional victim does not preclude a conviction based on the defendant's mistaken attempt to commit the underlying acts of an offense. *See United States v. Hackworth*, 483 F. App'x 972, 978 (6th Cir. 2012) (citing *United States v. Hughes*, 632 F.3d 956, 958 (6th Cir. 2011); *United States v. Hart*, 635 F.3d 850, 855 (6th Cir. 2011)). Specifically, the Sixth Circuit and other circuit courts have upheld convictions in cases where defendants believed that they were sexually soliciting minor victims electronically but were, in fact, speaking to police. *E.g., id.* (collecting cases). This case presents the equivalent situation, except that the invented victim is a nonexistent witness instead of a nonexistent child. The fact that § 1512(a)(1)'s mention of "attempt" appears alongside the statute's other elements, rather than in a different part of the same sentence, is not a basis for abandoning the rule that typically governs these circumstances.[1]

Finally, Anhalt relies on *Lobbins v. United States*, 900 F.3d 799, 801 (6th Cir. 2018), in which the Sixth Circuit applied the rule of *Fowler* in a witness tampering case, where the defendant

---

[1] The court notes, moreover, that adopting Anhalt's reading of the statute would not necessarily prevent law enforcement from using tactics like the ones used here. Rather, law enforcement could (at least as far as the statute is concerned) run largely identical sting operations, but would be required to use actual potential witnesses as bait. The court sees very little reason to assume that Congress crafted the statute in a way that would needlessly endanger cooperating witnesses.

attacked but did not kill the cooperating witness. That case, however, like *Fowler*, had an identifiable victim with a tenuous connection to any federal case. The defendant, moreover, was charged under 18 U.S.C. § 1512(a)(2), which, unlike § 1512(a)(1), does not require a killing or an attempt to kill, but merely the use of physical force, the threat thereof, or an attempt at either in furtherance of the witness tampering scheme. Therefore, the one similarity that *Lobbins* shares with this case but not *Fowler*—the lack of a killing—is beside the point, because the defendant still committed the degree of force necessary for his offense to move beyond "attempt" under the relevant statutory subsections. *Lobbins* merely raised the same question as *Fowler*, just with regard to an "adjacent provision" of the same statute. *Lobbins*, 900 F.3d at 802. *Lobbins*, therefore, does not dictate Anhalt's preferred result any more than *Fowler* does.

For these reasons, Anhalt's Motion to Dismiss Count One (Docket No. 141) is **DENIED**.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge